# EXHIBIT A

PANITCH
Intellectual Property Law
SCHWARZE

**Philip L. Hirschhorn**
TEL: (215) 965-1257
phirschhorn@panitchlaw.com

August 28, 2026

**VIA EMAIL (abuse@trustname.com)**

Fewmoretaps OÜ d/b/a Trustname.com
Attn: Legal & Compliance Department
(Chief Compliance Officer)
13 Roseni tn
10111 Tallinn, Estonia
ICANN Registrar (IANA ID No. 4318)

Re: **URGENT DEMAND FOR IMMEDIATE REVERSAL OF UNAUTHORIZED DOMAIN TRANSFERS AND RETRANSFER OF STOLEN DOMAINS — Account No. 100 201 612 (Jon Grant / Oath Research) — Support Tickets #SPR-53111 and #SPR-53198**

Dear Sir or Madam:

This firm represents Oath Research ("Client"), the account holder of record for Trustname.com customer account number 100 201 612. We write regarding the unauthorized account takeover and mass exfiltration of Client's domain name portfolio that occurred on your platform earlier today, August 28, 2026, and to demand the immediate reversal of the unauthorized transfers and full restoration of Client's domains, as detailed below.

**I. Background**

Based on Trustname's own account logs and security alerts, and on Client's independent forensic investigation of this incident, the following occurred:

1. At approximately 14:11:41 UTC (07:11:41 PDT) on August 28, 2026, an unauthorized party accessed Client's account (No. 100 201 612) from IP address 187.40.39.14, geolocated to Dushanbe, Tajikistan. Client's authorized users operate exclusively from Arizona, USA.

2. Client's account had multi-factor authentication ("MFA") enabled and active at all relevant times. Despite this, the unauthorized session was permitted to proceed on the strength of an automated

"New Device Authorization" notice, rather than being blocked or subjected to a genuine interactive MFA challenge.

3. Within approximately 140 seconds of gaining access, the intruder initiated twenty-five (25) domain ownership push operations, directing Client's domains to an adversary-controlled Trustname account associated with the email address modastores@proton.me.

4. Trustname's systems processed these reassignments using the registrar's "Designated Agent" mechanism, with Trustname acting as Designated Agent for both the purported transferor and the recipient simultaneously. This automatically modified the WHOIS/registrant-of-record data for the affected domains and bypassed the transfer lock and registrant-approval safeguards that would ordinarily apply to a change of registrant.

5. About twenty-three (23) of Client's domains were fully transferred out of Client's account before Client regained control. Client recovered access to the account at 14:16:03 UTC — approximately five minutes after the intrusion began — which allowed one additional targeted domain, oaclinic.com, to be intercepted before its transfer completed.

6. The domains transferred out of Client's account include Client's flagship commercial platform, *oathresearch.com*, which Client's records indicate processes in excess of $70,000 in daily commercial revenue, as well as domains supporting Client's e-commerce, clinical research, telehealth, and pharmaceutical/peptide-formulation brands. A complete list of the affected domains, as reflected in the forensic report, is enclosed as Schedule A.

7. Approximately five hours later, at 19:00 UTC, the same threat actor attempted to pivot to Client's separate Google Workspace administrative account, attempting to alter the account's recovery phone number and recovery email address — an apparent attempt to establish persistent control over Client's domain and email infrastructure and to intercept Trustname's own security and verification communications. Client has separately taken steps to secure that environment.

8. Client promptly reported this incident to Trustname, including through Support Ticket #SPR-53111 (submitted at 14:37:57 UTC on August 28, 2026) and Support Ticket #SPR-53198 (submitted at 19:09:19 UTC on August 28, 2026, under authenticated PIN verification), and formally placed Trustname on notice of a litigation hold covering all records related to this incident.

**II. Trustname Has Both the Ability and the Obligation to Reverse These Transfers**

Because the affected domains were reassigned internally — from Client's account to another account within Trustname's own platform (modastores@proton.me) — the domains never left Trustname's internal infrastructure. Trustname therefore has the unilateral technical ability to reverse these unauthorized registrant changes and restore full ownership and control of the domains to Client's account without requiring any action by ICANN, the registry operators, or any third party.

Trustname's obligation to do so promptly arises from, among other things:

1. Trustname's own registration agreement and policies, which do not authorize the transfer or reassignment of a customer's domain assets without that customer's actual authorization;

2. ICANN's Transfer Policy, including its provisions governing unauthorized changes of registrant (referenced in Client's forensic report as "IRTP-C"), which exist precisely to protect registrants against this type of unauthorized reassignment;

3. Section 3.4 of the ICANN Registrar Accreditation Agreement ("RAA"), which requires Trustname to maintain and preserve all records, audit trails, logs, and communications concerning the registration, transfer, and administration of the domains at issue; and

4. Trustname's general obligation to maintain account security and authentication controls adequate to prevent the type of account takeover described above, particularly where — as here — MFA was active on the account but was not enforced as an effective control.

## III. Demand

Client demands that Trustname take the following actions immediately:

1. **Rollback and Retransfer.** Reverse all unauthorized internal push and registrant-change transactions executed between 14:12:33 UTC and 14:17:00 UTC on August 28, 2026, and restore full ownership, administrative control, and the original WHOIS/registrant records for each domain listed on Schedule A to Client's account, customer number 100 201 612.

2. **Account and Registry Lock.** Apply registrar and registry locks to all of Client's domains, including oaclinic.com, to prevent any further outbound transfer, DNS modification, WHOIS change, or internal push pending final resolution of this matter.

3. **Freeze of Adversary Account.** Immediately freeze and preserve the account associated with modastores@proton.me and all domains and data associated with it, pending law enforcement and ICANN Contractual Compliance review.

4. **Preservation of Evidence.** Preserve, and produce to the undersigned upon request, all logs, audit trails, API request and response payloads, IP routing histories, and Designated Agent execution records relating to this incident from August 27, 2026 forward, consistent with Trustname's obligations under RAA §3.4 and the litigation hold communicated in Support Ticket #SPR-53198.

5. **Forensic Accounting.** Provide a written accounting of Trustname's internal investigation into the unauthorized access from IP address 187.40.39.14, including the specific mechanism by which Trustname's multi-factor authentication controls were bypassed or failed to block the unauthorized session.

6. **Written Confirmation.** Provide written confirmation to the undersigned once each of the foregoing steps has been completed.

**IV. Reservation of Rights**

Nothing in this letter is intended as, nor should it be construed as, a complete statement of the facts, Client's damages, or Client's legal rights and remedies, all of which are expressly reserved. Should Trustname fail to promptly and fully remediate this matter, Client is prepared to pursue all available remedies, including without limitation a complaint to ICANN Contractual Compliance, a report to law enforcement and applicable data protection authorities, and civil litigation for breach of contract, negligence, and related claims, together with recovery of all resulting damages, costs, and attorneys' fees.

Given the ongoing and active harm to Client's business — including commercial, clinical, and telehealth platforms currently misdirected or unavailable as a result of this incident — we request Trustname's immediate attention to this matter. Please direct all communications regarding this matter to the undersigned.

Very truly yours,

Philip L. Hirschhorn

cc (via email):
COREhub S.R.L.U. (ICANN Registrar, IANA ID No. 15 / Reseller Tag CORE-1735)
Attn: Legal/Abuse Department (abuse@corehub.net)
Gran Via de les Corts Catalanes 452, Àtic 2
08015 Barcelona, Spain

**SCHEDULE A**

**Affected Domains (Account No. 100 201 612)**

| No. | Domain Name | Pre-Incident Function (per forensic report) |
|---|---|---|
| 1 | oathresearch.com | Flagship commercial portal |
| 2 | oathpeptides.com | E-commerce product line |
| 3 | oathpeptide.com | Brand protection variant |
| 4 | oathresearchllc.com | Corporate legal entity asset |
| 5 | oathresearchsupply.com | Supply chain & logistics domain |
| 6 | othresearchsupply.com | Typographical variant of #5 |
| 7 | oathscript.com | Pharmacy routing service |
| 8 | rxoath.com | Prescription portal |
| 9 | researchersonly.com | Specialized research infrastructure |
| 10 | summerscientific.com | Scientific research asset |
| 11 | mypromisepeptides.com | Consumer product domain |
| 12 | promiseclinical.com | Clinical trial portal |
| 13 | promisehealthrx.com | Telehealth prescription brand |
| 14 | promisepeptide.com | Primary brand domain |
| 15 | promisetelemed.com | Telemedicine routing asset |
| 16 | startpromise.com | Patient onboarding gateway |
| 17 | vowamino.com | Amino acid brand domain |
| 18 | vowaminos.com | Plural brand asset |
| 19 | vowchemistry.com | Chemical formulation brand |
| 20 | vowlaboratory.com | Laboratory services asset |
| 21 | vowpeptide.com | Product line portal |
| 22 | vowpeptides.com | Plural e-commerce domain |
| 23 | vowscience.com | Research brand domain |
| 24 | vowscientific.com | Scientific operations asset |
| — | *oaclinic.com* | Telehealth portal asset — push intercepted prior to completion; recovered to Client's account. Included here for completeness of the requested lock (Demand §2). |