**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

OATH RESEARCH, LLC and STACEY JON GRANT,

Plaintiffs,

v.

FEWMORETAPS OÜ d/b/a TRUSTNAME.COM, *et al.*,

Defendants.

No. 26cv11303 (EP) (ADS)

**MEMORANDUM ORDER**

**PADIN, District Judge.**

## I. INTRODUCTION AND BACKGROUND

Plaintiffs Oath Research, LLC ("Oath Research") and Stacey Jon Grant allege that unknown actors gained unauthorized access to their domain registration account with Defendant Fewmoretaps OÜ d/b/a Trustname.com ("Trustname"), an Estonian domain name registrar. D.E. 1 ("Complaint" or "Compl."). According to Plaintiffs, the unknown actors transferred control of a portfolio of domain names associated with Plaintiffs' businesses and thereafter attempted to transfer the domain names from Trustname to other domain registrars, and Trustname declined Plaintiffs' requests to restore the domain names to their account. *Id.* ¶¶ 13–29. Plaintiffs assert claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 and the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), as well as a claim for negligence under state law. *Id.* ¶¶ 30–45.

On September 2, 2026, Plaintiffs filed an emergency motion seeking a temporary restraining order ("TRO") and preliminary injunction. D.E. 3-1 ("TRO").[1] Plaintiffs ask the Court, among other things, to order Trustname to restore Plaintiffs as registrants of record for the disputed domain names, prevent further transfers or modifications, freeze and preserve the recipient account associated with the unknown actors, and preserve records relating to the domain names. *See* D.E. 3-10. Plaintiffs seek that relief before Trustname has appeared or responded to the TRO. *See* TRO; Dkt.

The Court has reviewed the TRO, the Complaint, and the supporting papers. Because Plaintiffs have not established a basis for personal jurisdiction over Trustname, the Court will **DENY *without prejudice*** the TRO. Independently, Plaintiffs' Rule 65 certification does not justify proceeding ex parte against Trustname, a known and reachable defendant.

## II. LEGAL STANDARD

Granting preliminary injunctive relief such as a TRO "is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)).

To obtain injunctive relief, the moving party must show: (1) a reasonable probability of success on the merits, (2) irreparable harm absent relief, (3) that the balance of harms favors relief, and (4) that the public interest favors relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). The first two factors—likelihood of success on the merits and irreparable harm—are considered the "most critical." *Id.* at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

[1] Plaintiffs' notice of motion is filed at D.E. 3; counsel's Rule 65 certification at D.E. 3-2 ("Rule 65 Certification" or the "Certification"); counsel's supporting declaration at D.E. 3-4; and Grant's supporting declaration at D.E. 3-7.

"If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

Federal Rule of Civil Procedure 65(b) governs the issuance of TROs without notice to the adverse party. A court may issue a TRO ex parte only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant . . . certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

## III. ANALYSIS

Because of the "strong policy to conserve judicial time and resources," preliminary matters such as subject matter and personal jurisdiction "should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 282 F.3d 220, 229 (3d Cir. 2002) (citation omitted). That principle has particular force here because Plaintiffs seek ex parte injunctive relief. *See, e.g.*, *New Earthshell Corp. v. Lycos Internet Ltd.*, No. 14-7665, 2015 WL 170564, at *2–5 (D.N.J. Jan. 12, 2015) (addressing personal jurisdiction before preliminary injunction factors and denying injunctive relief because the court was not satisfied that personal jurisdiction existed). Accordingly, the Court first considers whether it may exercise personal jurisdiction over Trustname before reaching the merits of Plaintiffs' TRO.

### A. Plaintiffs Have Not Established Personal Jurisdiction Over Trustname Under Federal Rule of Civil Procedure 4(k)(2)

Plaintiffs allege that Trustname is an Estonian entity, that it "knowingly and continuously does business in the United States," including by providing domain registration services to

Plaintiffs and other United States customers. Compl. ¶ 10. Plaintiffs do not allege that Trustname is subject to general or specific personal jurisdiction in New Jersey. Rather, they contend that Trustname is "not subject to jurisdiction in any state's courts of general jurisdiction," and that therefore, Trustname is subject to personal jurisdiction in this Court pursuant to Rule 4(k)(2). *Id.*

Rule 4(k)(2) permits a federal court to exercise personal jurisdiction for a federal claim only where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and exercising jurisdiction is consistent with the Constitution and laws of the United States. Fed. R. Civ. P. 4(k)(2). The Rule thus serves as a jurisdictional backstop for foreign defendants who are not subject to personal jurisdiction in any State but whose contacts with the United States as a whole may support jurisdiction. In those circumstances, a court considers the defendant's contacts with the United States as a whole, rather than with any particular State. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 258–59 (3d Cir. 2000); *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 455 (3d Cir. 2004).

A plaintiff invoking Rule 4(k)(2) therefore must provide some factual basis for concluding that the defendant is not subject to personal jurisdiction in any State—merely reciting the Rule's requirements is insufficient. For example, a court in this District required a plaintiff invoking Rule 4(k)(2) to make an affirmative representation, based on information readily available to it, that the defendant is not subject to jurisdiction in any State's courts of general jurisdiction. *See Gonzalez v. BAM Trading Servs., Inc.*, No. 24-10286, 2026 WL 765378, at *11–12 (D.N.J. Mar. 18, 2026). Similarly, another court in this District required a plaintiff to "affirmatively demonstrate" that Rule 4(k)(2)'s requirements are satisfied. *See Davydov v. Scandinavian Airlines Sys.*, No. 19-17628, 2020 WL 12979368, at *4 n.6 (D.N.J. Oct. 5, 2020). And, in a nonprecedential decision, the Third Circuit likewise held that Rule 4(k)(2) was unavailable where the plaintiff failed to allege facts

demonstrating that the defendants were not subject to another State's jurisdiction. *See Ngambo v. N.Y. State Dep't of Tax'n & Fin.*, No. 24-2545, 2025 WL 1650011, at *3 (3d Cir. June 11, 2025) (holding that Rule 4(k)(2) was unavailable because the plaintiff "ha[d] not alleged facts demonstrating Defendants are not subject to New York's courts of general jurisdiction").

The Court cannot conclude from Plaintiffs' papers that Trustname is not subject to jurisdiction in any State. Beyond a conclusory allegation in the Complaint saying so, Compl. ¶ 10, Plaintiffs do not address whether any particular State may exercise specific jurisdiction over Trustname. Most notably, Plaintiffs do not explain why Arizona courts may not exercise jurisdiction over Trustname. Their own allegations identify Arizona as a plausible forum that Plaintiffs have not addressed: Grant resides in Arizona, Plaintiffs' authorized Trustname users allegedly operate exclusively from Arizona, and the disputed domain names were administered through Grant's Trustname account. *See id.* ¶¶ 2, 13–14. Grant likewise declares that Oath Research's authorized personnel operate exclusively from Arizona. D.E. 3-7 ¶ 5.

Those allegations do not affirmatively establish that an Arizona court may exercise specific jurisdiction over Trustname, and the Court does not so hold. They do, however, raise a jurisdictional question Plaintiffs must address before invoking Rule 4(k)(2). Whether Trustname is subject to specific jurisdiction in Arizona may turn on facts absent from the present papers, such as how Grant opened and maintained the Trustname account; what location information Plaintiffs provided to Trustname; whether and how Trustname accepted payments from Plaintiffs; how Trustname communicated with Plaintiffs; and any agreements governing the registrar relationship. Those facts may bear on whether Trustname purposefully directed activities to Arizona and whether this dispute arises from those activities.

In short, Plaintiffs have not explained why Trustname's administration of an account for Plaintiffs, whose authorized users allegedly operated exclusively from Arizona, is insufficient to support specific jurisdiction in Arizona. The Court therefore concludes Plaintiffs have not shown that Trustname is beyond the jurisdictional reach of every State, as Rule 4(k)(2)(A) requires.

Furthermore, even assuming that Plaintiffs could establish Rule 4(k)(2) is otherwise available, a second problem remains. Rule 4(k)(2) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant" who satisfies the Rule's requirements. Fed. R. Civ. P. 4(k)(2). In general, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The current record reflects neither service of a summons on Trustname nor the filing of a waiver of service. To the contrary, Plaintiffs' counsel certifies that he asked Trustname to accept service by email or courier and received no response. Rule 65 Certification ¶ 5.

The Court need not decide the extent to which Rule 65(b) may permit ex parte relief before formal service. But here, Rule 4(k)(2) is Plaintiffs' sole asserted basis for personal jurisdiction over Trustname, and the service or waiver through which that Rule establishes personal jurisdiction has not occurred. That circumstance further counsels against issuing an affirmative injunction directing Trustname to transfer control of disputed property.

In sum, the Court is not satisfied that it may exercise personal jurisdiction over Trustname. Because the requested TRO would require Trustname to take affirmative action, that threshold deficiency is sufficient to deny the TRO. *See New Earthshell*, 2015 WL 170564, at *4–5.

### B. Plaintiffs Have Also Not Justified Ex Parte Relief Against Trustname Under Rule 65(b)

There is a separate problem with Plaintiffs' request for ex parte relief: Plaintiffs have not shown why the Court must act before Trustname has an opportunity to respond. A court can issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Rule 65(b)'s notice requirement is not a technical formality. Rather, the Rule's "stringent restrictions" on ex parte relief reflect the basic principle that judicial action ordinarily follows "reasonable notice and an opportunity to be heard." *Hawkins v. Rabner*, No. 26-2303, 2026 WL 625454, at *2 (D.N.J. Mar. 5, 2026) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974)); *see also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 319–20 (3d Cir. 2020) (explaining that Rule 65(b)'s requirements restrict ex parte TROs to "preserving the status quo" and "preventing irreparable harm" only for the time "necessary to hold a hearing, and no longer").

Although Plaintiffs filed the certification Rule 65(b)(1)(B) requires, it does not explain why Trustname should not receive an opportunity to respond before the Court orders it to provide substantial affirmative relief. *See* Rule 65 Certification. The Certification recounts Plaintiffs' repeated communications with Trustname: counsel emailed Trustname on August 28, 2026; Trustname subsequently included counsel on communications concerning Plaintiffs' account; counsel informed Trustname on September 1 that Plaintiffs intended to file this action and seek a TRO; and counsel asked Trustname to accept service by email or courier. *Id.* ¶¶ 2–5.

The Certification then explains why notice should not be required as to the anonymous John Doe Defendants: Plaintiffs do not know their physical addresses and intend to notify them through the modastores@proton.me email address. *Id.* ¶¶ 6–7. But the Certification gives no comparable explanation why Trustname cannot be afforded notice and a brief opportunity to respond before the Court orders it to act. In fact, Plaintiffs' own evidence demonstrates that Trustname is known, reachable, and actively communicating with Plaintiffs about this very dispute. *See id.* ¶ 4 (acknowledging that Trustname "receives and responds to emails from Plaintiffs regarding this matter").

Plaintiffs contend that proceeding through ordinary briefing would permit the disputed domains to be transferred again before the Court can act. *See* TRO at 10–11. Even considering that explanation, the asserted urgency may warrant an expedited briefing schedule, but it does not, without more, justify why Trustname should receive no opportunity at all to be heard.

In the Court's view, that concern regarding Trustname's opportunity to respond is heightened by the nature of the relief Plaintiffs request. Plaintiffs' proposed order would require Trustname to restore Plaintiffs as registrants of record, alter the present control of the domain names, freeze another account, restore nameserver settings, and direct communications to other registrars and registry operators. D.E. 3-10 ¶¶ 2–5. Whatever the ultimate merits of Plaintiffs' allegations, those provisions would provide substantial affirmative relief before Trustname has been heard. They therefore go beyond merely preserving the present status quo while the Court affords Trustname an expedited opportunity to respond. *See Hope*, 972 F.3d at 319–20. The Court therefore concludes that Plaintiffs have not satisfied Rule 65(b)(1)(B) as to Trustname. That provides an additional basis to decline ex parte relief.

### C. The Court Does Not Reach the Preliminary Injunction Factors

Because Plaintiffs have not established the threshold basis for exercising personal jurisdiction over Trustname and have not justified ex parte relief against that known and reachable Defendant, the Court does not reach whether Plaintiffs have satisfied the four factors ordinarily governing preliminary injunctive relief. *See Deborah Heart & Lung Ctr. v. Child. of the World Found., Ltd.*, 99 F. Supp. 2d 481, 486–87 (D.N.J. 2000) (declining to enter a TRO when a potentially viable personal jurisdiction and venue issue emerged even though the court initially concluded that the plaintiff had demonstrated likelihood of success and irreparable harm).

## IV. CONCLUSION AND ORDER

Accordingly,

**IT IS**, on this 3rd day of September 2026,

**ORDERED** that Plaintiffs' motion for a temporary restraining order and preliminary injunction, D.E. 3, is **DENIED *without prejudice*** to renewal upon a sufficient showing that this Court may exercise personal jurisdiction over Trustname and, as appropriate, after notice and an opportunity to respond; and it is further

**ORDERED** that any renewed request for emergency injunctive relief in this Court shall be accompanied by a supplemental submission addressing the basis for personal jurisdiction over Trustname under Federal Rule of Civil Procedure 4(k)(2). The submission shall address, at minimum: (1) the factual and legal basis for Plaintiffs' assertion that Trustname is not subject to personal jurisdiction in any State's courts of general jurisdiction, including Arizona, together with any agreements or account records bearing on that issue; (2) the facts supporting Trustname's contacts with the United States as a whole; and (3) the status of service of summons or any waiver of service as to Trustname. Any factual assertions not already supported by the existing record shall be supported by declaration or other competent evidence; and it is further

**ORDERED** that Plaintiffs shall immediately transmit to Trustname, at abuse@trustname.com, support@trustname.com, and any other email address through which Trustname has communicated with Plaintiffs concerning this dispute, copies of the Complaint, the TRO Motion and all supporting papers, and this Memorandum Order. This paragraph requires transmission for purposes of actual notice and does not determine whether such transmission constitutes formal service under Federal Rule of Civil Procedure 4; and it is further

**ORDERED** that Plaintiffs shall promptly pursue service of the summons and Complaint on Trustname in accordance with Federal Rule of Civil Procedure 4 and shall file proof of any completed service, waiver, or other authorized method of service; and it is further

**ORDERED** that Plaintiffs shall transmit the same materials to the email address modastores@proton.me, which Plaintiffs identify as associated with the John Doe Defendants, and file proof of that transmission; and it is further

**ORDERED** that, should Trustname appear and Plaintiffs renew their request for emergency injunctive relief in this Court, Trustname may file a response within **five days** of the renewed application, unless otherwise ordered, limited to personal jurisdiction, service, the present status and control of the disputed domain names, and Plaintiffs' request for emergency injunctive relief; and it is finally

**ORDERED** that any renewed request for emergency injunctive relief shall identify with specificity the domain names for which relief is sought and shall be accompanied by a declaration stating the current registrar, registrant of record, transfer status, and entity presently capable of preventing or reversing a transfer for each such domain.

**/s/ Evelyn Padin**

Evelyn Padin, U.S.D.J.